IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CAPE FOX CORPORATION, an Alaska Corporation; APM, LLC, an Alaska Limited Liability Company; and 1CI, a Delaware Corporation, <br><br>      Plaintiffs, <br><br> vs. <br><br> CRAIG JACKSON; ADVANCE BUSINESS MANAGEMENT SERVICES INC., a Nevada Corporation; SANDERS ENGINEERING CO., INC., a California Corporation; and BUTLER MARKETING & CONSULTING GROUP, INC., a Virginia Corporation; <br><br>      Defendants. | Case No. 3:10-cv-0080-RRB <br><br><br><br><br><br> **ORDER REGARDING MOTION** <br> **TO DISMISS AT DOCKET 34** |

I.  INTRODUCTION

Before the Court are Defendants Craig Jackson ("Jackson"), Sanders Engineering, Co., Inc. ("SEC"), and Advanced Business Management Services, Inc. ("ABMS")(collectively "Defendants") with a Motion to Dismiss at Docket 34.  Defendants move to dismiss

Counts I, II, III, V, VI, VIII, XII, and XIII of the First Amended Complaint under Federal Rules of Civil Procedure Rule 12(b)(6), arguing that the Counts fail to state a claim upon which relief can be granted.[1] Plaintiffs Cape Fox Corp. ("CFC"), APM, L.L.C. ("APM"), and 1CI Corp. ("1CI") (collectively "Plaintiffs") oppose at Docket 36 and contend that there are valid factual allegations that support each of the eight counts sought to be dismissed and all eight counts should be heard by the trier of fact.[2]

Because Plaintiffs' fraudulent misrepresentation claim was not pled with particularity; because Plaintiffs' economic damages must be pursued in accordance with the economic loss doctrine; and because business destruction is not a separate claim, but a factor in calculating consequential damages; the Court concludes that a partial dismissal is appropriate. Defendants' Motion to Dismiss, therefore, at **Docket 34** is hereby **GRANTED IN PART** as to Counts III, VI, VIII, and XII of the First Amended Complaint and **DENIED IN PART** as to Counts I, II, V, and XIII. Additionally, Defendants' Motion to Dismiss at **Docket 24** is rendered moot by Plaintiffs' First Amended Complaint and is, therefore, **DENIED**.[3]

---

[1] Docket 34 at 1-2.

[2] Docket 36 at 2.

[3] <u>Pacific Bell Telephone Co. v. Linkline Communications, Inc.</u>, 129 S.Ct. 1109, 1123 (2009) (an amended complaint supercedes the original complaint).

ORDER RE MOTION TO DISMISS AT DOCKET 34 - 2
3:10-CV-0080-RRB

**II. FACTS**

This action arises out of a contractual business dispute. CFC is an Alaska Native Corporation ("ANC") based in Ketchikan, Alaska.[4] As an ANC, CFC is entitled to participate in Federal Government contracting programs both directly and through its subsidiaries.[5]

APM's and 1CI's business each consisted primarily of government contracts awarded under the Small Business Administration ("SBA") 8(a) program.[6] CFC had acquired a majority interest in APM and was interested in using APM to expand into 8(a) contracting.[7] The representatives of CFC and APM met Jackson, who was active in 8(a) contracting.[8] Jackson acquired an interest in APM and 1CI and took over management of both companies.[9]

Through his management position at APM and 1CI, from 2004 through 2006, Jackson caused both companies to enter into agreements with ABMS (which Jackson owned), SEC (Jackson's wife being the president), Butler Marketing & Consulting Group, Inc.

---

[4] Docket 27 at 3.

[5] Id.

[6] Id.

[7] Id. at 4.

[8] Id.

[9] Id. at 4-5.

ORDER RE MOTION TO DISMISS AT DOCKET 34 - 3
3:10-CV-0080-RRB

("Butler") (Jackson's sister being the president), and Chung & Associates.[10]  In addition, in December 2004, Townsend Jackson, Jackson's brother, executed, on behalf of APM, a promissory note in favor of ABMS for a loan of $1.9 million to APM.[11]

In late 2008, the United States Government began an investigation into the actions of Jackson, ABMS, APM, and 1CI under the SBA 8(a) program, which led to the suspension of APM from contracting under the program.[12]

In March 2010, Plaintiffs filed a complaint in the Superior Court for the State of Alaska alleging, *inter alia*, breach of contract, breach of fiduciary duties, and professional negligence on the part of Defendants.[13]  The matter was then removed to this Court on April 22, 2010.[14]  The current dispute stems from the actions taken by Jackson as manager of APM and 1CI and the consequences of such actions to Plaintiffs.

## III. RULE OF DECISION

Rule 12(b)(6) allows a party to assert by motion that all or part of the opposing party's claims, as stated in the complaint,

---

[10]   Id. at 6.

[11]   Id. at 9.

[12]   Id. at 6.

[13]   Docket 34 at 2.

[14]   Id.

ORDER RE MOTION TO DISMISS AT DOCKET 34 - 4
3:10-CV-0080-RRB

fail to state a claim upon which relief can be granted. Dismissal can be based on a lack of a cognizable legal theory or the absence of facts to support a valid legal theory.[15] A complaint, however, should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief[,]" with the court treating as true all facts alleged in the complaint.[16] Furthermore, all reasonable inferences must be drawn in favor of the non-moving party.[17] The Court should not look to "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[18]

**IV. DISCUSSION**

   **A. Counts I, III, and V Are Not Time-barred Because Plaintiffs Allege Plausible Facts That Jackson and ABMS Actively Concealed Their Fraudulent Scheme From Plaintiffs.**

Defendants argue that Counts I, III, and V, (Breach of Fiduciary Duty against Jackson, Fraudulent Misrepresentation

---

[15] Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

[16] Id.

[17] Holden v. Hagopian, 978 F.2d 1115, 1118 (9th Cir. 1992) (citing Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987)).

[18] Gilligan v. Jamco Development Corp., 108 F.3d 246, 249 (9th Cir. 1997).

against Jackson, and Breach of Fiduciary Duty against ABMS), should be dismissed because the claims are raised after either the two-year tort or three-year contract Alaska statute of limitations limit has passed.[19] Defendants contend that Plaintiffs had inquiry notice of the possibility of these claims as early as 2004.[20] The facts in the complaint, however, allege otherwise.

The Court applies the statutes of limitations of the state in which it sits.[21] Alaska employs the discovery rule, which states that "a cause of action accrues 'when a reasonable person has enough information to alert that person that he or she has a potential cause of action or should begin an inquiry to protect his or her rights.'"[22] A party that conceals the existence of fraudulent activity from the plaintiff, however, is estopped from pleading "the statute of limitation if the plaintiff's delay in bringing suit was occasioned by reliance on the false or fraudulent representation."[23] A party should be charged with the knowledge of

---

[19] Docket 34 at 3; see generally AS 09.10.070 and AS 09.10.053.

[20] Docket 34 at 4.

[21] Guaranty Trust Co. of N.Y. v. York, 326 U.S. 99, 110 (1945).

[22] Egner v. Talbot's, Inc., 214 P.3d 272, 278 (Alaska 2009).

[23] Palmer v. Borg-Warner Corp., 838 P.2d 1243, 1247 (Alaska 1992) (quoting Sharrow v. Archer, 658 P.2d 1331, 1333 (Alaska 1983)).

the "concealment only when it would be utterly unreasonable for the party not to be aware of the deception."[24]

In the present case, it was reasonable for Plaintiffs not to be aware of Jackson's and ABMS's alleged fraudulent activities because Jackson and ABMS were, allegedly, taking measures to actively conceal such activities from Plaintiffs.[25] According to the complaint, the true impact of the transactions between Jackson, ABMs, and other companies was not revealed to Plaintiffs until the investigations by the United States Government in late 2008.[26] Furthermore, Plaintiffs trusted and relied on both ABMS and Jackson, who allegedly held himself out as a competent manager in the realm of SBA 8(a) program contracts,[27] to efficiently and effectively facilitate APM's and 1CI's 8(a) contracts.[28] Plaintiffs had no reason to suspect that Jackson and ABMS harbored ulterior motives.[29] Thus, on its face, the complaint puts forward believable facts that show that Plaintiffs did not have enough information to alert them to a possible cause of action against Defendants nor to

---

[24] Id. at 1251.

[25] Docket 27 at 6.

[26] Id.

[27] Id. at 4.

[28] Id.

[29] Id. at 6.

warrant reasonable inquiry into the matter. Therefore, since the complaint was filed in March of 2010, Counts I, III, and V are well within either of Alaska's statute of limitations limits. Dismissal, therefore, is not warranted.

    **B.    Count II Avoids Dismissal Because Jackson Holds an Interest in Both APM and 1CI and the Complaint Pleads Enough Evidence to Support Holding Jackson Liable for Agreements Entered into by APM and 1CI.**

Defendants argue that Count II (Breach of Contract against Jackson) should be dismissed because the complaint fails to allege the existence of a contractual relationship between Jackson and the other parties to the agreements that APM and 1CI entered into while Jackson was managing both companies, and that such privity of contract is needed in order to successfully bring a breach of contract claim.[30] Although Jackson was not a signatory to the contracts between APM, 1CI, and the other involved companies, Jackson was a stake holder in both APM and 1CI, and the complaint alleges enough facts to support piercing the corporate veil of the two companies and holding Jackson liable.

"Piercing the corporate veil is a means of assessing liability for the acts of a corporation against the equity holder in the corporation."[31] However, a court should only pierce the veil in

---

[30] Docket 34 at 5.

[31] <u>Pyramid Printing Co. v. Alaska State Com'n for Human Rights</u>, 153 P.3d 994, 1000 (Alaska 2007).

ORDER RE MOTION TO DISMISS AT DOCKET 34 - 8
3:10-CV-0080-RRB

"exceptional circumstances."[32] In the case at hand, the complaint sufficiently alleges such exceptional circumstances.

The complaint alleges that Jackson manipulated and controlled the actions of SEC, ABMS, Butler, and other entities and in doing so, ignored the concept that all of the entities were separate.[33] Furthermore, Plaintiffs allege that Jackson used SEC to funnel funds to himself to the detriment of CFC, APM, 1CI, and other companies.[34] If true, along with evidence of the 2008 government investigation into Defendants' 8(a) actions, these facts point to exceptional circumstances that could warrant piercing the corporate veil and finding Jackson liable. Count II, therefore, will not be dismissed.

**C. Count III Is Dismissed Because the First Amended Complaint Fails to Provide Enough Information for Defendants to Prepare an Adequate Answer to the Allegations.**

Plaintiffs argue that the First Amended Complaint contains specificity regarding the time, place, and nature of the misrepresentation by Jackson, and that Plaintiffs have pled specific enough facts to place Defendants on notice.[35] Plaintiffs

---

[32] L.D.G., Inc. v. Brown, 211 P.3d 1110, 1125 (Alaska 2009).

[33] Docket 27 at 4.

[34] Id.

[35] Docket 36 at 10.

misinterpret the Federal Rules of Civil Procedure Rule 9(b) pleading standard. While putting the defendant on notice is the crux of the basic pleading standard as described in Rule 8, Rule 9(b) requires the heightened standard of pleading with particularity. Moreover, particularity is adjudicated by determining whether the pleading "identifies the circumstances constituting fraud so that a defendant can *prepare an adequate answer from the allegations*."[36]

Broad allegations lacking in particularized detail do not satisfy the particularity requirement of 9(b).[37] Plaintiffs' only attempt at pleading with particularity occurs in relation to the nature of the alleged misrepresentations and is comprised of nothing more than broad, general allegations that are devoid of any supporting detail. Furthermore, Plaintiffs do not pinpoint the time of the alleged fraud; they simply state that the misrepresentations were made and ongoing between 2004 and 2009.[38] Thus, the Court finds that Count III is not supported by sufficient facts and must be dismissed.

---

[36] Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 540 (9th Cir. 1989) (emphasis added).

[37] Bly-Magee v. California, 236 F.3d 1014, 1018 (9th Cir. 2001).

[38] Docket 27 at 20.

ORDER RE MOTION TO DISMISS AT DOCKET 34 - 10
3:10-CV-0080-RRB

**D. Counts VI and VIII Are Dismissed Because Economic Damages Based on Professional Services Contracts must Be Sought under a Contract Theory of Liability.**

Plaintiffs argue that because

> ABMS held itself out as possessing a degree of knowledge and skill ordinarily possessed by a construction manager qualified to run an SBA 8(a) certified construction management firm . . . [,] ABMS had an independent duty imposed by law, apart from its contractual duty to APM, to adhere to a professional standard of care[,]

and, therefore, ABMS can be sued for professional negligence.[39] Additionally, Plaintiffs contend that SEC can be sued for professional negligence because SEC "owed a duty to APM and CFC to provide accounting services for the APM contracts utilizing the care and skill a reasonably competent accountant would utilize."[40] Plaintiffs rely primarily on Dep. Of Natural Res. v. Transamerica Premier Ins. Co., 856 P.2d 766 (Alaska 1993), to show that a party can recover economic losses arising from a professional's malpractice despite the existence of a contractual relationship between the parties because the duty of professional care is one imposed by law, not contract.[41] However, the Court in Pedersen v. Flannery, 863 P.2d 856 (Alaska 1993), announced the contrary

---

[39] Docket 36 at 12.

[40] Docket 27 at 24.

[41] Id. at 11

principal that professional malpractice claims seeking solely economic damages sound in contract, not tort.[42]

Pedersen distinguished between economic and non-economic damages sought under malpractice claims and noted that when the parties are in privity of contract economic damages sought for negligent professional services must be pursued under a theory of contractual liability and not tort.[43] With the apparent dissonance between Transamerica and Pedersen, the Court relies, in the interest of continuity, on St. Denis v. Department of Housing and Urban Development, 900 F. Supp. 1194 (D. Alaska 1995). In St. Denis, the court found that "Alaska cases foreshadow a general rule precluding negligence actions by those in privity where only economic losses are alleged."[44] Because Plaintiffs' negligence claims against ABMS and SEC allege only economic damages, and because Plaintiffs were in privity with both ABMS and SEC, the negligence claims are not appropriate. Additionally, ABMS's and

---

[42] See 863 P.2d at 957-58

[43] Id.; Lee Houston & Associates, Ltd. v. Racine, 806 P.2d 848, 854 (Alaska 1991). ABMS's actions qualify as professional services. American Motorists Ins. Co. v. Republic Ins. Co., 830 P.2d 785, 787 (Alaska 1992) (professional services includes acts: arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill and in determining whether a particular act is a "professional service" the court must look not to the title or character of the party performing the act, but to the act itself).

[44] 900 F. Supp. at 1204.

ORDER RE MOTION TO DISMISS AT DOCKET 34 - 12
3:10-CV-0080-RRB

Case 3:10-cv-00080-RRB   Document 40   Filed 10/07/10   Page 12 of 16

SEC's actions raised by the negligence claims practically mirror those used by Plaintiffs to support their breach of contract claims against both companies.[45] Promises expressed or implied in a contract must be enforced by an action on the contract, not in tort.[46] Therefore, Plaintiffs' grievances under these particular claims must be remedied under a contractual legal theory and not under a theory of professional negligence. Accordingly, Counts VI and VIII are dismissed.

> **E. Count XII Is Dismissed Because it Is Unclear Whether Alaska Law Recognizes a Separate Tort of "Business Destruction" and Such a Claim Is Better Suited as a Factor in Determining Consequential Damages.**

Plaintiffs argue that Alaska courts recognize the tort of business destruction, and that they can make such a claim because Defendants' alleged fraudulent activity has proximately caused Plaintiffs' companies to be suspended from government contracting, thereby, destroying such businesses.[47] In support of their contention, Plaintiffs cite Industrial Commercial Elec., Inc. v. Mclees, 101 P.3d 593 (Alaska 2004). In Industrial, defendants counterclaimed on a theory of tortious business destruction, and the court, while dismissing all of the plaintiffs' claims, took no

---

[45] Docket 27 at 7, 8, 22-24.

[46] Alaska Pacific Assur. Co. v. Collins, 794 P.2d 936, 946 (Alaska 1990).

[47] Docket 36 at 13-14.

action with regard to the business destruction claim.[48] However, there was no motion to dismiss nor any other motions that would have allowed the <u>Industrial</u> court to consider the validity of the business destruction claim. Showing that a party in a single case raised the claim of business destruction does not establish that Alaska courts recognize such a tort.

Moreover, the consideration of whether a business has been destroyed or not is more appropriate in the damages phase of trial. Business destruction is akin to loss of profits and other consequential damages that stem from a breach of contract. In addition, the facts alleged under the business destruction claim are practically the same as the facts alleged under the breach of contract claims against Jackson, SEC, Butler, and ABMS. Thus, Plaintiffs may pursue the alleged destruction of their businesses as a consideration for consequential damages, but not as a separate claim.

**F. Count XIII Avoids Dismissal Because There Is an Immediate Need to Determine Whether or Not the Promissory Note Is Currently Enforceable Against APM.**

Defendants argue that a declaratory judgment as to the validity of the promissory note given by APM to ABMS for a loan of $1.9 million to APM is not ripe "because the promissory note would only be involved in a hypothetical future 'accounting' . . . " due

---

[48] 101 P.3d at 596.

to Plaintiffs' failure to make a claim on the promissory note.[49] It is not, however, necessary to make a claim on the promissory note for the Court to issue a declaratory judgment concerning such note.[50] A declaratory judgment action is justiciable if: (1) it is brought by an interested party; (2) involves an actual controversy that has not reached a stage at which either party may seek a coercive remedy; and (3) a party that could sue for coercive relief has not yet done so.[51] The controversy must be "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[52]

In the present case, Plaintiffs bring an action for declaratory judgment because the promissory note, allegedly, was received for an improper purpose and was not supported by consideration, and the complaint states that there is no evidence that funds were even issued to APM in exchange for such note.[53] The promissory note places an ever-present and immediate burden on APM to pay the amount of the loan to ABMS. It is of no consequence

---

[49] Docket 38 at 8.

[50] <u>Seattle Audubon Soc. v. Mazel</u>, 80 F.3d 1401, 1405 (9th Cir. 1996).

[51] <u>Id.</u>

[52] <u>Id.</u>

[53] Docket 27 at 27.

that ABMS has not actually taken action to collect on the note; the note's mere existence makes APM responsible for the note.  Thus, the Court determines that Count XIII is justiciable and, therefore, not subject to dismissal.

**V.  CONCLUSION**

For the foregoing reasons, a partial dismissal of the Counts in Plaintiffs First Amended Complaint is proper.  Accordingly, Defendants' Motion to Dismiss at **Docket 34** is hereby **GRANTED IN PART** as to Counts III, VI, VIII, and XII and **DENIED IN PART** as to Counts I, II, V, and XIII.  Additionally, Defendants' Motion to Dismiss at **Docket 24** is rendered moot by Plaintiffs' First Amended Complaint and is, therefore, **DENIED.**

**IT IS SO ORDERED.**

ENTERED this 7th day of October, 2010.

                    S/RALPH R. BEISTLINE
                    UNITED STATES DISTRICT JUDGE